E-filing

1   **GUTRIDE SAFIER LLP**
    ADAM J. GUTRIDE (State Bar No. 181446)
2   SETH A. SAFIER (State Bar No. 197427)
3   L. JAY KUO (State Bar No. 173293)
    KRISTEN G. SIMPLICIO (State Bar No. 263291)
4   835 Douglass Street
    San Francisco, California 94114
5   Telephone: (415) 336-6545
    Facsimile: (415) 449-6469
6
7   Attorneys for Plaintiff

FILED

AUG – 5 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

8                       **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                           **OAKLAND DIVISION**

ADR

11

12   KENNETH A. THELIAN, an individual, on behalf of him-     CASE NO.
     self, the general public and those similarly situated
13                                                            **C10-03440**
     Plaintiff,
14                                                            CLASS ACTION COMPLAINT
             v.                                               FOR VIOLATIONS OF THE
15                                                            TRUTH IN BILLING RE-
     AT&T MOBILITY LLC; NEW CINGULAR WIRELESS                 QUIREMENTS; FALSE AD-
16   PCS LLC; NEW CINGULAR WIRELESS SERVICES,                 VERTISING; FRAUD, DECEIT
     INC.                                                     AND/OR MISREPRESENTA-
17                                                            TION; AND
     Defendants                                               UNFAIR BUSINESS PRAC-
18                                                            TICES
19
                                                              JURY TRIAL DEMANDED
20

21

22

23

24

25

26

27

28

Class Action Complaint

1

2      Kenneth Thelian, by and through his counsel, brings this Class Action Complaint ("Class

3 Action Complaint") against Defendants, on behalf of himself and those similarly situated, for

4 violations of the Truth in Billing Act; sections 349 and 350 of the New York General Business

5 Law; breach of contract; and fraud, deceit and/or misrepresentation. The following allegations

6 are based upon information and belief, including the investigation of Plaintiff's counsel, unless

7 stated otherwise.

8                        **INTRODUCTION**

9    1.    This case is about how Defendants unfairly, unlawfully, and deceptively charge

10 and bill customers exorbitant, international roaming fees for calls that they did not answer while

11 they were traveling abroad. Not only did Defendants unfairly, unlawfully, and deceptively

12 impose such charges, unlike other mobile phone companies, they affirmatively hid from their

13 customers how they could avoid such charges and structured their bills so that customers were not

14 aware of these charges. Thereby, Defendants effectively forced customers into incurring these

15 undisclosed fees and charges.

16                          **PARTIES**

17    2.    Kenneth Thelian ("Plaintiff") is an individual and a resident of the City of Los

18 Angeles in Los Angeles County, California. Plaintiff was a resident of New York City, New

19 York until 2006, at which time he moved to the City of Los Angeles.

20    3.    Defendant AT&T Mobility LLC is a limited liability company under the laws of

21 the state of Delaware, having its principal place of business in Atlanta, Georgia.

22    4.    Defendant New Cingular Wireless PCS, LLC is a limited liability company under

23 the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

24    5.    Defendant New Cingular Wireless Services, Inc. is a corporation incorporated

25 under the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

26    6.    Defendants New Cingular Wireless PCS, LLC and New Cingular Wireless

27 Services, Inc. are referred to herein as "Cingular" or "Cingular Wireless." In 2006, AT&T

28 purchased Cingular. Shortly thereafter, Cingular was renamed and rebranded as AT&T Wireless.

-1-

As used herein, "AT&T" refers collectively to AT&T Mobility LLC, its predecessors including Cingular, and the brands Cingular Wireless and AT&T Wireless.

7.     The Parties identified in paragraphs 3 through 7 of this Class Action Complaint are collectively referred to hereafter as "Defendants."

8.     At all times herein mentioned, each of the Defendants was the agent, servant, representative, officer, director, partner or employee of the other Defendants and, in doing the things herein alleged, was acting within the scope and course of his/her/its authority as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of each Defendant.

9.     At all times herein mentioned, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

10.     At all times herein mentioned, the acts and omissions of Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

11.     At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein. At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as herein alleged.

## JURISDICTION AND VENUE

12.     This action is brought by Plaintiff pursuant, *inter alia*, to the Truth in Billing Requirements For Common Carriers, 47 U.S.C. § 201, *et. seq.* Defendants are "telecommunications carriers" within the meaning of 47 C.F.R. § 64.2400(b).

13.     Plaintiff is a resident of the City of Los Angeles, California.

14.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, and affecting, the entire nation.

15.     Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of New York and the State of California.

1    16.    Accordingly, Plaintiff alleges that jurisdiction and venue are proper in this Court.

2                                    **SUBSTANTIVE ALLEGATIONS**

3    **Defendants Market, Advertise and Sell Nationwide Wireless Phones And Related Services**

4        17.    AT&T is a leading provider of mobile telephone products and services.

5        18.    AT&T represents that all of their rate plans include basic voicemail at no extra

6    charge. Customers are not charged for receiving voicemail, for calls they do not answer, or for

7    receiving visual notifications that a call was missed or that a voicemail was left.

8        19.    In early 2005, Defendants began heavily marketing their international service

9    plans and international functionality of their mobile phones to consumers nationwide. For

10   example, AT&T marketed and advertised (and continues to market and advertise), without

11   limitation, the following:

12       More wireless AT&T phones work in more places around the world than any other U.S.
13       carrier — over 200 countries. Stay connected while traveling to over 200 countries, plus
         get discounted rates in over 85 of those countries when you sign up for AT&T World
14       Traveler.

15       Going on a trip outside the U.S.? See if you have coverage based on your device and
         itinerary.

16       Next time you travel overseas, why not take your AT&T service with you?

17       20.    For customers who wish to use their AT&T-enabled mobile telephones outside the

18   United States, AT&T offers on its website a "Wireless Travel Guide." By using the Wireless

19   Travel Guide, customers can determine, based on their mobile phone device and itinerary,

20   whether they will have coverage in a certain country and what rates that they will pay (in each

21   country) for telephones calls that they make or receive and for sending text, picture and/or video

22   messages. For example, the Wireless Travel Guide informs AT&T customers traveling to

23   Belgium that for calls placed and received in Italy they will be charged $1.29 per minute, $.50 per

24   sent text message, and $1.30 per sent picture or video message. The guide further informs

25   customers that receiving text messages is free.[1]

26       21.    On its website, AT&T also informs customers that there are additional

27

28   _____

[1] The international roaming fees and charges vary by country and mobile phone device.

1  international roaming charges for data transfer, such as sending/receiving email or surfing the

2  Internet. AT&T warns customers who have data-enabled mobile phones that, if they wish to

3  avoid these charges, they should turn their data roaming feature to "off" so that the phones will

4  not automatically check for emails or retrieve other data.

5       22.     AT&T customers are provided with identical information when they telephone

6  AT&T with questions concerning international use of their phone and/or to activate their phones

7  for international use.

8       23.     AT&T does not, however, inform its customers that there will be, and its

9  affirmative statements mislead customers into thinking there will not be, international roaming

10  charges for incoming calls they do not accept or miss, while they are abroad. AT&T also does

11  not inform its customers that there may be, and its affirmative statements mislead customers into

12  thinking there will not be, international roaming charges for incoming calls they do not accept or

13  miss while abroad, even when their phone is *off* or in flight mode.

14       24.     Many AT&T consumers were also charged double for unanswered incoming calls

15  while roaming abroad, first for the "incoming" leg of the call (from the caller to the customer's

16  mobile phone) and a second time for the "outgoing" leg—i.e., forwarding the call back to

17  AT&T's U.S. voicemail platform. Thus, a one minute voicemail would cost a customer twice the

18  rate a one minute call would cost. AT&T dubbed this the "trombone effect," but never provided

19  to its customers notice of this issue.

20       25.     For example, AT&T trains its representatives that, if customers inquire about

21  international usage, the representatives should inform them that they will incur charges for

22  sending international text messages and for making and receiving calls. AT&T does not train its

23  representatives to state, and the representatives do not state, that customers will incur charges for

24  calls they do not answer while they are traveling abroad, even when their phone is *off* or in flight

25  mode.

26       26.     Similarly, for a short period of time during the proposed class period, when AT&T

27  customers arrive in a foreign country and turn on their phones, they would receive from AT&T a

28  text message welcoming them to that country and informing them that will incur charges for

1  international text messages and phone usage. The text messages also typically informed

2  customers to turn off international data roaming. AT&T, however, intentionally omitted from the

3  text message the fact that customers will incur charges for calls that they do not answer while

4  traveling abroad. AT&T's intentional omissions deceive reasonable customers into believing

5  that they will not incur additional charges for calls that they do not answer, while they were

6  traveling abroad.

7  27. Nor does AT&T adequately inform customers, either on their website, in a text

8  message, or verbally when they call a customer service representative, how they can avoid

9  incurring charges calls that they do not answer, while traveling abroad. With respect to AT&T's

10  website, the information does not appear in the Wireless Travel Guide nor on numerous other

11  pages dealing with international services and international roaming charges and other fees.

12  AT&T's intentional failure to provide such information only compounds the deception because

13  other mobile phone carriers provide such information to their customers.

14  28. The only source of information about these additional charges that will be imposed

15  on international travelers is on a single "Frequently Asked Question" page buried deep in

16  AT&T's website. To navigate to this page, a customer would have to specifically click on

17  "Frequently Asked Questions" even though he or she has already seen detailed information about

18  international roaming charges and other fees that provides no indication of the additional

19  voicemail and unanswered call related charges. Until approximately February of 2009, the

20  Frequently Asked Questions stated the following:

21  Q. Will I be charged long distance in addition to the per-minute roaming rate?

22  A. No. All calls you make or receive while roaming internationally are charged at the per

23  minute voice roaming rate—with no additional long distance charges. While roaming

24  internationally, calls deposited to your voicemail (when the phone is "active" and if

25  busy/no answer) will incur twice the per minute charge.

26  29. In approximately February of 2009, AT&T the Frequently Asked Questions stated

27  as follows:

28  Q. How am I charged for Voicemail calls while roaming internationally?

-5-

A. Voicemail calls are charged as follows:

When your device is on:

   * Calls that you do not answer that are routed to the AT&T voicemail system will be charged as an international roaming incoming call to your device.

   * In addition, the foreign carrier's routing of that call to the AT&T voicemail system may generate an outgoing call charge from your device's location to the U.S.

   * These charges apply even if the caller disconnects from the voice mail system without leaving a message.

If your device is turned off or in flight mode and the wireless network is off:

   * When someone tries to call you, the call will go directly to your personal voicemail greeting.

   * Since the network does not try to deliver the call to you in a foreign country, there are no international roaming charges.

When receiving Visual Voicemail messages on your iPhone:

   * Visual Voicemail messages received when roaming outside of the U.S. will be charged at International roaming data rates, either at the International pay-per-use data rate or against your iPhone International data package.

30.     AT&T does not require customers to view the Frequently Asked Questions page before using their phones internationally, nor does it make it likely that users will view this page, as it is buried deep on AT&T's website, and customer service representatives are not trained to tell customers who call AT&T to look at this page. Nor are customer service representatives trained to provide this information. To the contrary, they are trained not to provide this information unless a customer specifically requests it—i.e., asks if they will be charged for unanswered calls, voicemail that they receive but do not check or, even, when people disconnect from voicemail without leaving a message. In any event, AT&T's Frequently Asked Questions has always failed to inform customers the possibility of being charged twice the international rate for the same unanswered call and being charged for incoming calls even if their phone was off or in flight mode. More egregiously, during the class period, AT&T compounded the deception by autoprovising Plaintiff, and those similarly situated, for international roaming, without proper disclosure.

31.     Defendants published and provided to customers, including Plaintiff, and those

-6-

1   similarly situated, a "Terms of Service" agreement, which, from 2002 to 2008 stated, "Chargeable

2   time may also occur from other uses of our facilities, including by way of example, voicemail

3   deposits and retrievals and call transfers." The "Terms of Service" document does not define

4   "voicemail deposits," what it means by "may," nor does it mention international travel or

5   international roaming fees. It was not until 2009 that Defendants revised the language to inform

6   customers that they will be "charged normal international roaming airtime rates when calls are

7   routed to voicemail even if no message is left." This statement does not inform customers that

8   they may be charged double for the calls. Nor does it inform customers that such charges may be

9   imposed even if their phone is off or in flight mode.

10      32.     Defendants force customers to incur these additional charges if they wish to use

11  their telephones while traveling abroad. For example, if a customer wishes to be able to send and

12  receive text messages, there is no way to configure the phone so as to avoid the charges for

13  incoming calls and voicemail notifications, even if the calls are not answered and the voicemails

14  are not checked. Otherwise put, in order to use other functions that AT&T advertises, and for

15  which they are told how much they will be charged, customers are forced to incur additional

16  inadequately or undisclosed charges and fees. But AT&T never informed customers that the only

17  way to avoid these hidden fees and charges was to leave their phones at home (or never turn them

18  on) while they travel abroad.

19      33.     Finally, Defendants provide to customers bills that separately itemize calls placed

20  when roaming internationally. But, these bills do not make clear which of these charges are for

21  calls that they do not answer, while traveling abroad. Rather, these calls are listed along with

22  incoming and outgoing calls for which customers expect to be charged. Thus, a customer would

23  not be able to discern from his bill which of these charges did not conform with their

24  expectations.

25      **Plaintiff Was Charged International Roaming Rates for Calls He Did Not Answer,**
        **Voicemail He Did Not Check And Calls He Did Not Place.**
26

27      34.     Plaintiff has been a mobile telephone customer of AT&T since August 2002.

28      35.     In May 2005, Plaintiff traveled to Belgium. Prior to departing, Plaintiff was not

-7-

Class Action Complaint

informed that he would be charged for incoming calls that he did not answer while traveling abroad.

36. Despite the fact that Plaintiff did not place or answer any telephone calls while in Belgium, he was still charged a total of \$12.90. Some of these charges were for telephone calls that he did not answer. Had he known he would be charged for the call irrespective of whether or not he answered, he would have kept his phone off or informed friends, family and business associates not to call but rather to text or email.

37. The bill received by Plaintiff indicated the calls he made while roaming abroad in a separate area of the bill. The bill did not identify which of these calls were for calls that he did not answer while traveling abroad.

38. On June 27, 2005, Plaintiff called AT&T to complain about the charges. The customer service representative agreed to reverse \$8 in charges, due to Plaintiff's confusion. AT&T's representative, however, did not adequately explain why these charges were incurred.

39. In August 2005, Plaintiff travelled to Montreal, Canada. His friends and family left him voicemails while he travelled. Plaintiff later received a bill, which did not indicate which roaming charges calls that he did not answer while traveling abroad. Plaintiff was charged \$15.81 for roaming calls, some of which were for calls that he did not answer while roaming internationally. These charges, however, went unnoticed.

40. In February 2007, as Plaintiff was preparing for another trip, Plaintiff called AT&T customer service to discuss international rates. He was not informed that he would be charged for incoming calls he did not answer.

41. Plaintiff travelled to Mexico from February 20, 2007 to March 4, 2007. During that time, Plaintiff was billed \$92.72. The bill did not indicate which of these charges were for calls that he did not answer while traveling abroad. These charges also went unnoticed.

42. Plaintiff's experience was not an isolated incident. Rather, many other customers have been charged for voicemail that they did not check, calls that they did not answer and calls they did not place while traveling abroad.

43. For example, one customer posted this statement on an Internet complaint forum:

-8-

Class Action Complaint

AT&T Roaming Charges.. on VOICEMAIL??

AAGH!

I need your help/input guys. I went to the caribbean for a week in June and I get a bill for $150 of roaming fees. The problem is, I only made *2* calls. Before I went, I specifically asked an AT&T retail employee if I can carry my phone in the caribbean without penalty. I was told specifically that if I turn off my data roaming then I will only get charged for the calls that I make. That will be the only over-ages.

They are charging me $2.99/minute for every single voicemail call I receive while there. I racked up about $150 in overages!!
HUH??? :befuddled

Has anyone else experienced this? I am especially upset because I did my due dili-gence and still got screwed. They offered to refund 1/2 the roaming charges as a one time "courtesy"..

Uhm... No, they need to remove the whole thing. I am currently awaiting a call back from a higher power that for some reason, takes 24-72 hours.

They must be busy with complaints.

http://www.howardforums.com/printthread.php?t=1401697, last visited May 8, 2010.

44.    Another customer wrote:

Can an ATT employee PLEASE comment on the problems with voicemail while roaming internationally? I just received a statement containing $20 in charges for unsuccessful attempts to leave me voicemail. For every attempt, there's $1.29 for an incoming call, and on the next line $1.29 for forwarding it to a number in the 646 area code that turns out to be generic voicemail access.

Had callers known what to do, they could have re-entered my phone number and left me a message, but, unsuprisingly (sic), none of them guessed this. I didn't re-ceive any messages at all for the entire trip. Just charges.

In a tiny footnote, the ATTWS website does admit the double roaming charges for voicemail, but nowhere does it disclose the near impossibility that you will ever receive a message. Are there ANY plans to address, or even ackowledge (sic), this issue

http://forums.wireless.att.com/cng/board/message?board.id=gsmgprs&thread.id=3395, last visited May 8, 2010.

-9-

1

## CLASS ALLEGATIONS

2
45.    Plaintiff brings this action against Defendants on behalf of himself and all others

3
similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

4
Plaintiff seeks to represent two groups of similarly situated persons. The first group, which will

5
be called the "National Class" is defined as follows:

6
All United States residents who, from August 1, 2006 through the present, De-

7
fendants charged for international roaming for unanswered incoming calls to
their U.S.-based mobile numbers, while traveling abroad.

8
The second group, which will be called the "New York Class" is defined as follows:

9
All New York residents who, from August 1, 2004 through the present, De-

10
fendants charged for international roaming for unanswered incoming calls to
their U.S.-based mobile numbers, while traveling abroad.

11

12
46.    This action has been brought and may properly be maintained as a class action

13
against the Defendants pursuant to the provisions of Rule 23 of the Federal Rules of Civil

14
Procedure because there is a well-defined community of interest in the litigation and the proposed

15
class is easily ascertainable.

16
47.    Numerosity: Plaintiff does not know the exact size of either class, but it is

17
estimated that each class is composed of more than 100,000 persons. The persons in each class

18
are so numerous that the joinder of all such persons is impracticable and the disposition of their

19
claims in a class action rather than in individual actions will benefit the parties and the courts.

20
48.    Common Questions Predominate: This action involves common questions of law

21
and fact to the potential class. Each National Class Member's claim derives from the deceptive,

22
unlawful and/or unfair statements and omissions that led customers to believe that they would not

23
be charged, and failed to inform customers that they would be charged, for calls that they did not

24
answer while traveling abroad and the bills that these customers received that did not clearly

25
identify these charges. Each New York Class Member's claim derives from the deceptive,

26
unlawful and/or unfair statements and omissions that led customers to believe that they would not

27
be charged, and failed to inform customers that they would be charged, for calls that they did not

28
answer while traveling abroad. The common questions of law and fact predominate over

-10-

1  individual questions, as proof of a common or single set of facts will establish the right of each

2  member of each class to recover. Among the questions of law and fact common to the classes

3  are:

4          a)     Whether the monthly bills provided by Defendants to the National Class

5  contained clear descriptions of the charges for calls that they did not answer while traveling

6  abroad;

7          b)     Whether Defendants unfairly, unlawfully and/or deceptively charged

8  National and New York Class Members for calls that they did not answer while traveling abroad;

9          c)     Whether Defendants adequately disclosed to the National and New York

10  Class Members that they would be charged for calls that they did not answer while traveling

11  abroad;

12          d)     Whether Defendants unfairly, unlawfully and/or deceptively led New York

13  Class Members to believe that they would not be charged for for calls that they did not answer

14  while traveling abroad;

15          e)     Whether Defendants' advertising and marketing regarding their

16  international telephone service and mobile phones was likely to deceive New York Class

17  Members or was unfair;

18          f)     Whether Defendants engaged in the alleged conduct knowingly, recklessly,

19  or negligently;

20          g)     Whether Defendants breached their contracts with National and New York

21  Class Members;

22          h)     The amount of revenues and profits Defendants received and/or the amount

23  of monies or other obligations lost by the National and New York Class Members as a result of

24  such wrongdoing;

25          i)     Whether the National and New York Class Members are entitled to

26  injunctive and other equitable relief and, if so, what is the nature of such relief; and

27          j)     Whether the National and New York Class Members are entitled to payment

28  of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and

-11-

1 if so, what is the nature of such relief.

2 49. Typicality: Plaintiff's claims are typical of the National and New York Class
3 Members because Plaintiff was charged for calls that they did not answer while traveling abroad.
4 Thus, Plaintiff and Class Members sustained the same injuries and damages arising out of
5 Defendants' conduct in violation of the law. The injuries and damages of each Class Member
6 were caused directly by Defendants' wrongful conduct in violation of law as alleged.

7 50. Adequacy: Plaintiff will fairly and adequately protect the interests of all Class
8 Members because it is in his best interests to prosecute the claims alleged herein to obtain full
9 compensation due to him for the unfair and illegal conduct of which he complains. Plaintiff also
10 has no interests that are in conflict with or antagonistic to the interests of Class Members.
11 Plaintiff has retained highly competent and experienced class action attorneys to represent his
12 interests and that of the class. No conflict of interest exists between Plaintiff and Class Members
13 hereby, because all questions of law and fact regarding liability of Defendants are common to
14 Class Members and predominate over any individual issues that may exist, such that by prevailing
15 on his own claim, Plaintiff necessarily will establish Defendants' liability to all Class Members.
16 Plaintiff and his counsel have the necessary financial resources to adequately and vigorously
17 litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to
18 the Class Members and are determined to diligently discharge those duties by vigorously seeking
19 the maximum possible recovery for Class Members.

20 51. Superiority: There is no plain, speedy, or adequate remedy other than by
21 maintenance of this class action. The prosecution of individual remedies by members of the class
22 will tend to establish inconsistent standards of conduct for the Defendants and result in the
23 impairment of Class Members' rights and the disposition of their interests through actions to
24 which they were not parties. Class action treatment will permit a large number of similarly
25 situated persons to prosecute their common claims in a single forum simultaneously, efficiently,
26 and without the unnecessary duplication of effort and expense that numerous individual actions
27 world engender. Furthermore, as the damages suffered by each individual member of the class
28 may be relatively small, the expenses and burden of individual litigation would make it difficult

-12-

1   or impossible for individual members of the class to redress the wrongs done to them, while an

2   important public interest will be served by addressing the matter as a class action.

3       52.     Nexus to California. The State of California has a special interest in regulating the

4   affairs of corporations that do business here and persons who live here, including those who move

5   here from other states. Accordingly, there is a substantial nexus between Defendants' unlawful

6   behavior and California such that the California courts should take cognizance of this action.

7       53.     Plaintiff is unaware of any difficulties that are likely to be encountered in the

8   management of this action that would preclude its maintenance as a class action.

9                                       **CAUSES OF ACTION**

10

11  **PLAINTIFF'S FIRST CAUSE OF ACTION**
    **(Violation of Common Carriers Truth in Billing Requirements, 47 U.S.C. 201, *et seq.* and 47**
    **C.F.R. 64.2401, *et seq*)**
12  **On Behalf of Himself And The National Class**

13

14      54.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint

15  as if set forth herein.

16      55.     This cause of action is brought pursuant to the Federal Communications

17  Commission's Common Carriers Truth in Billing Requirements, 47 U.S.C. 201 et seq., and the

18  corresponding regulations, 47 C.F.R. 64.2401, et seq. Pursuant to these regulations, on behalf of

19  similarly situated National Class Members, Plaintiff seeks actual damages for each Class Member

20  and restitution of any ill-gotten gains due to Defendants' acts and practices.

21      56.     Plaintiffs and those similarly situated received billing statements delineating

22  incoming and outgoing calls while travelling abroad, but these statements did not identify which

23  of these calls were to charged for incoming calls that they did not answer and/or for automatic

24  call forward to their voicemail, in violation of 47 C.F.R. 64.2401(1)(b), which requires that a

25  carrier provide clear, non-misleading plain language description of the services rendered.

26  Plaintiff and those similarly situated were not able to accurately assess that the services for which

27  they were billed were for calls they did not answer while traveling abroad as the information was

28  misleading.

57.     Because of material omissions in Defendants disclosures, Plaintiff, and those similarly situated, were unaware that they would not be billed for incoming calls that they did not answer while traveling abroad. They were additionally mislead by Defendants into believing that they would not be billed for incoming calls that they did not answer while traveling abroad. Defendants provided to Plaintiff and those similarly situated bills that did not conform to their understanding of the price charged in direct violation to 47 C.F.R. 64.2401(1)(b).

58.     Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the violations of Truth in Billing Requirements complained of herein, plus interest thereon, pursuant to 47 U.S.C. 206.

59.     Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein. The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of this Class Action Complaint.

60.     Plaintiff also seeks reasonable attorneys' fees according to proof pursuant to, without limitation, 47 U.S.C. 206;

**PLAINTIFF'S SECOND CAUSE OF ACTION**
**(False Advertising, New York General Business Law § 350, et seq.)**
**On Behalf Of Himself And The New York Class**

61.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

62.     Beginning at an exact date unknown to Plaintiff, but within six (6) years preceding the filing of the initial Complaint in this action, Defendants have made untrue, false, deceptive and or statements that were misleading in a material respect in connection with the advertising and marketing of their wireless services and mobile phones throughout the State of New York.

63.     Defendants have made representations and statements that lead reasonable customers to believe that they will not incur charges when using their phones abroad. Defendants inform customers that, when using their phones in the United States, they will not incur charges

-14-

1 for calls that they did not answer while traveling abroad. Defendants inform customers that,

2 when using their phones abroad, they will incur additional charges for making or receiving calls,

3 sending text messages and sending picture or video messages. Defendants, however, deceptively

4 did (and do) not adequately inform customers that, when traveling abroad, they will incur

5 roaming charges for calls that they did not answer while traveling abroad. AT&T also does not

6 inform its customers that there may be, and its affirmative statements mislead customers into

7 thinking there will not be, international roaming charges for incoming calls they do not accept or

8 miss while abroad, even when their phone is *off* or in flight mode. Finally, AT&T deceptively did

9 (and do) not adequately consumers that they may be charged double for unanswered incoming

10 calls while roaming abroad, first for the "incoming" leg of the call (from the caller to the

11 customer's mobile phone) and a second time for the "outgoing" leg—i.e., forwarding the call

12 back to AT&T's U.S. voicemail platform.

13      64.    Plaintiff and those similarly situated relied to their detriment on Defendants' false,

14 misleading and deceptive advertising and marketing practices. Had Plaintiff and those similarly

15 situated been adequately informed and not intentionally deceived by Defendants, they would have

16 acted differently by, without limitation, (1) leaving their phones at home or never turning them

17 on, (2) forwarding all calls, and (3) informing friends, family and business associates not to call

18 them while they were traveling.

19      65.    Defendants engaged in these false, misleading and deceptive advertising and

20 marketing practices to increase their profits.

21      66.    Accordingly, Defendants have engaged in false advertising, as defined and

22 prohibited by section 350, *et seq*. of the New York General Business Law.

23      67.    The aforementioned practices, which Defendants have used, and continue to use,

24 to their significant financial gain, also constitute unlawful competition and provide an unlawful

25 advantage over Defendants' competitors as well as injury to the general public.

26      68.    Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as

27 necessary and according to proof, to restore any and all monies acquired by Defendants from

28 Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive

Class Action Complaint

1  trade practices complained of herein, plus interest thereon.

2  69.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit

3  Defendants from continuing to engage in the false, misleading and deceptive advertising and

4  marketing practices complained of herein. The acts complained of herein occurred, at least in

5  part, within six (6) years preceding the filing of the initial Complaint in this Action.

6  70.    Plaintiff and those similarly situated are further entitled to and do seek both a

7  declaration that the above-described practices constitute false, misleading and deceptive

8  advertising, and injunctive relief restraining Defendants from engaging in any such advertising

9  and marketing practices in the future. Such misconduct by Defendants, unless and until enjoined

10  and restrained by order of this Court, will continue to cause injury in fact to the general public

11  and the loss of money and property in that the Defendants will continue to violate the laws of

12  California, unless specifically ordered to comply with the same. This expectation of future

13  violations will require current and future customers to repeatedly and continuously seek legal

14  redress in order to recover monies paid to Defendants to which Defendants are not entitled.

15  Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate

16  remedy at law to ensure future compliance with the New York General Business Law alleged to

17  have been violated herein.

18  71.    As a direct and proximate result of such actions, Plaintiff and the other members of

19  the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property

20  as a result of such false, deceptive and misleading advertising in an amount which will be proven

21  at trial, but which is in excess of the jurisdictional minimum of this Court.

22  72.    As a direct and proximate result of such actions, Defendants have enjoyed, and

23  continue to enjoy, significant financial gain in an amount which will be proven at trial, but which

24  is in excess of the jurisdictional minimum of this Court.

25  **PLAINTIFF'S THIRD CAUSE OF ACTION**
26  **(Fraud, Deceit and/or Misrepresentation)**
   **On Behalf of Himself and The New York Class**
27
   73.    Plaintiff realleges and incorporates by reference the paragraphs of this Class
28

-16-

1   Action Complaint as if set forth herein.

2       74.     In May and August of 2005 and again in February and March of 2007, Defendants

3   fraudulently and deceptively charged Plaintiff that calls that he did not answer while traveling

4   abroad would be charged at $1.29 per minute.

5       75.     These omissions were material at the time they were made. They concerned

6   material facts that were essential to the analysis undertaken by Plaintiff as to whether and how to

7   use his mobile phone while traveling abroad.

8       76.     At the time of his purchase of mobile phone services, activation of international

9   phone services and his arrival abroad, Defendants omitted to inform Plaintiff that calls that he did

10  not answer while traveling abroad would be charged at $1.29 per minute. Defendants had a

11  fiduciary duty to provide this information.

12      77.     In not so informing Plaintiff, Defendants breached their duty to him. Defendants

13  also gained financially from, and as a result of, their breach.

14      78.     Plaintiff and those similarly situated relied to their detriment on Defendants'

15  fraudulent omissions. Had Plaintiff and those similarly situated been adequately informed and

16  not intentionally deceived by Defendants, they would have acted differently by, without

17  limitation, (1) leaving their phones at home or never turning them on, (2) forwarding all calls, and

18  (3) informing friends, family and business associates not to call them while they were traveling

19      79.     Defendants had a duty to inform Class Members at the time of their purchase of

20  mobile phone services, activation of international phone services and their arrival abroad, of the

21  additional charges that would be imposed on calls that they did not answer while they were

22  abroad. Defendants omitted to provide this information to Class Members. Class Members

23  relied to their detriment on Defendants' omissions. These omissions were material to the

24  decisions of the Class Members to use their phones while traveling abroad. In making these

25  omissions, Defendants breached their duty to Class Members. Defendants also gained financially

26  from, and as a result of, their breach.

27      80.     By and through such fraud, deceit, misrepresentations and/or omissions,

28  Defendants intended to induce Plaintiff and those similarly situated to alter their position to their

-17-

1  detriment.

2      81.    Plaintiff and those similarly situated justifiably and reasonably relied on

3  Defendants' omissions, and, accordingly, were damaged by the Defendants.

4      82.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff and

5  those similarly situated have suffered damages in an amount equal to the amount that Defendants

6  billed them for calls that they did not answer while they were abroad.

7      83.    Defendants' conduct as described herein was willful and malicious and was

8  designed to maximize Defendants' profits even though Defendants knew that it would cause loss

9  and harm to Plaintiff.

10                    **PLAINTIFF'S FOURTH CAUSE OF ACTION**

11  **(Unfair, Unlawful and Deceptive Trade Practices, New York General Business Law**
                             **section 349,** *et seq.***)**

12                **On Behalf of Himself and the New York Class**

13

14      84.    Plaintiff realleges and incorporates by reference the above paragraphs of this Class

15  Action Complaint as if set forth herein.

16      85.    Within six (6) years preceding the filing of the initial Complaint in this action, and

17  at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair,

18  unlawful and deceptive trade practices in New York by engaging in the unfair, deceptive and

19  unlawful business practices outlined in this Class Action Complaint. In particular, Defendants

20  have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices against

21  the members of the New York Class by without limitation

22      a.  failing to properly inform their customers that they would be charged for calls that

23          they did not answer while they were traveling abroad;

24      b.  affirmatively deceiving their customers into believing that they would not be

25          charged for calls that they did not answer while they were traveling abroad;

26      c.  failing to properly inform their customers that they could be charged double for

27          calls that they did not answer while they were traveling abroad;

28      d.  affirmatively deceiving their customers into believing that they would not be

charged double for calls that they did not answer while they were traveling abroad;

e.  failing to properly inform their customers that they could be charged for calls that they did not answer while they were traveling abroad even if their phones were off or in flight mode;

f.  affirmatively deceiving their customers into believing that they would not be charged double they did not answer while they were traveling abroad even if their phones were off or in flight mode;

g.  marketing, advertising and selling international wireless services and mobile phones without disclosing to customers the true costs associated with such international services and phone usage;

h.  failing to properly inform their customers how they can use abroad their mobile phones without incurring charges for calls that they did not answer;

i.  and

86.  Plaintiff and those similarly situated relied to their detriment on Defendants' unfair, deceptive and unlawful business practices. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, (1) keeping their phones off, (2) forwarding all calls, and/or (3) informing friends, family and business associates not to call them while they were traveling abroad.

87.  Defendants engage in these unfair practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 349, et seq. of the New York General Business Law.

88.  The aforementioned practices, which Defendants have used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

89.  Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive

1  trade practices complained of herein, plus interest thereon.

2  90.  Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit

3  Defendants from continuing to engage in the unfair trade practices complained of herein.  The

4  acts complained of herein occurred, at least in part, within four (4) years preceding the filing of

5  this Class Action Complaint.

6  91.  Plaintiff and those similarly situated are further entitled to and do seek both a

7  declaration that the above-described trade practices are unfair, unlawful and/or fraudulent and

8  injunctive relief restraining Defendants from engaging in any of such deceptive, unfair and/or

9  unlawful trade practices in the future.  Such misconduct by Defendants, unless and until enjoined

10  and restrained by order of this Court, will continue to cause injury in fact to the general public

11  and the loss of money and property in that the Defendants will continue to violate the laws of

12  New York, unless specifically ordered to comply with the same.  This expectation of future

13  violations will require current and future customers to repeatedly and continuously seek legal

14  redress in order to recover monies paid to Defendants to which Defendants are not entitled.

15  Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate

16  remedy at law to ensure future compliance with the New York General Business Law alleged to

17  have been violated herein.

18  92.  As a direct and proximate result of such actions, Plaintiff and the other members of

19  the Class have suffered and continue to suffer injury in fact and have lost money and/or property

20  as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an

21  amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this

22  Court.

23  93.  As a direct and proximate result of such actions, Defendants have enjoyed, and

24  continue to enjoy, significant financial gain in an amount which will be proven at trial, but which

25  is in excess of the jurisdictional minimum of this Court.

26  **PLAINTIFF'S FOURTH CAUSE OF ACTION**
27  **(Breach of Written Contract)**
**On Behalf of Himself and the National Class**
28

-20-

94. Plaintiff realleges and incorporates by of the above paragraphs of this Class Action Complaint as if set forth herein.

95. In 2002, Plaintiff entered into a written contract with Defendants for mobile phone service (the "Agreement").

96. The Agreement specified, *inter alia*, what charges Plaintiff, and those similarly situated, would pay for mobile phone serivice. The Agreement expressly included that "Chargeable time may also occur from other uses of our facilities, including by way of example, voicemail deposits and retrievals and call transfers."

97. Except for the dates, locations, and amounts, Defendants entered into identical contractual agreements with Class Members.

98. Plaintiff and Class Members performed all their obligations under the contracts.

99. In May and August of 2005 and again in February and March of 2007, Defendants charged Plaintiff that calls that he did not answer while traveling abroad would be charged at $1.29 per minute. Such charges, however, were not included or otherwise disclosed in the Agreement

100. By assessing such charges, Defendants breached the written contract in which Plaintiff and those similarly situated entered into with Defendants.

101. As a direct and proximate result of the breaches set forth herein, Plaintiff, and those similarly situated, have suffered, and continue to suffer, damages in an amount which will be proven at trial, but which are in excess of the jurisdictional minimum of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

    A. On Causes of Action Number 1 against Defendants and in favor of Plaintiff and the other members of the National Class:

        1. Pursuant to 47 U.S.C. § 206, for the greater of actual or compensatory damages according to proof; and

    B. On Cause of Action Numbers 2 against Defendants and in favor of Plaintiff

-21-

and the other members of the New York Class:

    1. For the greater of actual damages or $50;

    2. For treble the greater of actual damages or $50 up to $1000;

C.  On Cause of Action Number 3 against Defendants and in favor of Plaintiff and the other members of the New York Class:

    1. An award of compensatory damages, the amount of which is to be determined at trial; and

    2. An award of punitive damages, the amount of which is to be determined at trial;

D.  On Cause of Action Number 4 against Defendants and in favor of Plaintiff and the other members of the New York Class:

    1. For the greater of actual damages or $50;

    2. For treble the greater of actual damages or $50 up to $1000; and

E.  On Causes of Action Number 5 against Defendants and in favor of Plaintiff and the other members of the National Class:

    1.  For the greater of actual or compensatory damages according to proof;

E.  On all causes of action against Defendants and in favor of Plaintiff, class members and the general public:

    1. For reasonable attorneys' fees according to proof pursuant to, without limitation, 47 U.S.C. § 207, New York General Law § 349(h) and New York General Law § 350(e) ;

    2. For costs of suit incurred according to proof pursuant to, without limitation, 47 U.S.C. § 207; and

    3. For such further relief as this Court may deem just and proper.

///

-22-

Class Action Complaint

1

**JURY TRIAL DEMANDED**

2

Plaintiff hereby demands a trial by jury.

3

Dated: August 5, 2010                                     **GUTRIDE SAFIER LLP**

4

5

6

Adam J. Gutride, Esq.

7

Seth A. Safier, Esq.
835 Douglass Street

8

San Francisco, California 94114

9

Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-23-